IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE W. JOHNSON,<br><br>      Plaintiff,<br><br>      vs.<br><br>BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY, Governing SOUTHERN ILLINOIS UNIVERSITY EDWARDSVILLE, KENNETH NEHER, and FRANK ZALOGA, Individually,<br><br>      Defendant. | Case No. 13-cv-00545-SMY-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' Board Of Trustees Of Southern Illinois University, Governing Southern Illinois University Edwardsville, Kenneth Neher, and Frank Zaloga's Motion for Summary Judgment (Doc. 30). For the following reasons, the Court grants the defendants' motion in its entirety.

The case before the Court alleges failure-to-promote employment discrimination. The plaintiff, an African-American male, applied for a promotion from his position as a building mechanic to the assistant superintendent of building services at Southern Illinois University-Edwardsville. The position became available upon the retirement announcement of the employee who had held the position for several years. (Doc. 30-Exhibit 1B). A waiver of the usual hiring procedure was sought to move Mr. Snyder into the vacant position. (Doc. 30-Exhibit 1B). The waiver was denied (Doc. 30-Exhibit 1C) and SIUE formed a three-person committee to conduct an internal search for the most qualified person to fill the position. (Doc. 30-Exhibit 2).

In order to determine initial qualification for the position, applicants were administered an exam, and a score of 70 was required to qualify. (Doc. 30-Exhibit 3). Each applicant took the

exam one time.[1] (Doc. 30-Exhibit 3). After the exam, three applicants, including the plaintiff, were interviewed for the position. (Doc. 30-Exhibit 2). At the conclusion of the interview process, Mr. Snyder, a caucasian, was offered the position, which he accepted. (Doc. 30-Exhibit 2). The plaintiff has alleged he was not promoted to the promotion because of his race.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). The issue of fact must be "genuine." Fed. Rules Civ.Proc. 56(c), (e). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v.*

---

[1] The plaintiff asserts that Mr. Snyder took the exam a second time after failing on the first attempt, but he has provided no support for this allegation. While the Court is required to look at disputed facts in the light most favorable to the plaintiff, it does not follow that the Court must accept conclusory allegations unsupported by the record. *DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999).

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

    I.    **Count I against the Board of Trustees (Title VII) and Count IV against the Board of Trustees (Illinois Civil Rights Act)**

When a non-discrimination statute, such as the Illinois Civil Rights Act (hereinafter ICRA), does not establish the plaintiff's burden of proof, courts often look to Title VII case law for guidance. *Frobose v. Am. Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 616 (7th Cir.1998). Thus, the analysis is the same for racial discrimination claims under Title VII and the ICRA. *Hosick v. Chicago State Univ. Bd. of Trustees*, 924 F. Supp. 2d 956, 966 (N.D. Ill. 2013).

A plaintiff can establish discrimination in violation of Title VII through either the direct or indirect method of proof. *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 727-28 (7th Cir. 2013). The direct method requires that the plaintiff provide direct or circumstantial evidence of the employer's discriminatory animus or retaliatory behavior. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir.2012) Such "smoking gun" evidence of discriminatory intent is hard to come by.[2]

The indirect method of proof requires that a plaintiff follow the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). After the plaintiff makes a prima facie case of discrimination, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for its action. *Id.* Doing so shifts the burden back to the plaintiff to show that the reason offered is mere pretext, which then allows an inference that the

---

[2] No evidence on the record suggests that any of the defendants ever used racially offensive language towards or about Mr. Johnson or that any of the hiring procedures openly discriminated against African-American or other minority applicants. None of the facts presented, even when viewed in the light most favorable to the Plaintiff, suggest that there is a "smoking gun" in this case. Therefore, the Court will not address this issue in depth and will instead focus on the indirect method on which the plaintiff must rely.

employer's real reason was unlawful. *Id*.; *Nichols v. Southern Illinois Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir.2007).

"When the defendant has proffered an explanation for termination that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead decide to dismiss the claim because there is no showing of pretext." *Abioye v. Sundstrand Corp*., 164 F.3d 364, 368 (7th Cir.1998). In this context, a pretext is "a lie, specifically a phony reason for some action." *Jackson v. E.J. Brach Corp*., 176 F.3d 971, 983 (7th Cir.1999). In this case, the facts and arguments that Johnson sets forth in order to show pretext are not persuasive.

When there is a job opening at SIUE, the Office of Institutional Compliance determines if the Affirmative Action Plan applies to the open position. (Doc. 32–Exhibit 1, 32-34). If the position is found to be "underutilized" or "goal-related," the job opening must be advertised to a sufficiently broad based applicant pool to ensure minority candidates will be included. (Doc. 32–Exhibit 1, 32-36, 43-48, 64-65). After the hiring committee makes a hiring recommendation, the Office of Institutional Compliance reviews the process to determine if the correct procedures were followed and if the requirements of the Affirmative Action Plan were met. (Doc. 32–Exhibit 3, 21-28). If everything appears to be in order, the hiring decision is approved. (Doc. 32–Exhibit 1, 116-118).

The plaintiff alleges that these practices lead to discrimination in hiring. Specifically, he cites to statistics showing that from 2008 through 2011, there were nine African-Americans in executive, administrative, and managerial positions in the university and that no African-Americans were hired for those job classifications during the 2005-2009 period. (Doc. 32–Exhibit 1, 187-197). Plaintiff also provided statistics showing that the percentage of minorities

holding administrative/managerial positions with SIUE was 11% in 2011 through 2012 while the national average for universities was 18%. (Doc. 32–Exhibit 1, 187-197). However, absent a "link between this alleged discrimination and the employment decisions which [the plaintiff] is challenging, this evidence does not assist the plaintiff." *Sample v. Aldi, Inc*., 61 F.3d 544, 551 (7th Cir.1995). Instead, what a plaintiff needs to do is "subject all of the employer's decisions to statistical analysis to find out whether [race] makes a difference." *Kuhn v. Ball State Univ*., 78 F.3d 330, 332 (7th Cir. 1996).

In this case, plaintiff does not explain the relevance of the data he presents or how the data shows discriminatory hiring practices. Without a statistical analysis addressing the number and the race of candidates applying for those positions and the candidates' relative qualifications, "[s]uch a list is next to worthless." *Id*. Raw data of age, race and location of persons promoted, "without more, is not competent to prove anything." *Odom v. Frank*, 3 F.3d 839, 849 (5th Cir.1993). Under these circumstances, the fact that few African-Americans were hired to fill an unknown number of vacancies fails to create a reasonable inference that Southern Illinois University's explanation, that it hired Snyder over Johnson because it believed Snyder to be better qualified, is pre-textual.

The plaintiff relies on the fact that a waiver was sought for Snyder to show racial discrimination. However, the waiver was sought prior to the opening of the position, and the plaintiff has not proffered any evidence that any of the defendants knew that he or any other African-American would apply and be qualified for the job. At most, what the plaintiff has shown is a possible personal preference for Snyder for the position. The reasoning given by the defendants for seeking the waiver was that Snyder's current position was going to be ending, he appeared to be an excellent worker who would qualify for the position and they preferred to put

him in another position rather than lay him off. (Doc. 30-Exhibit 2). None of these motives suggest any racial bias. Further, Plaintiff has not shown any pretext or racial motive for the defendants' wish to find a different position for Snyder within the University.

Next, Plaintiff alleges that Zaloga should not have been on the hiring committee after the waiver was denied because of the perceived conflict. Zaloga is the assistant director of Alton and East Saint Louis operations for the facilities management department, and he is responsible for the operation and maintenance of the grounds and buildings located on SIUE's Alton and East Saint Louis campuses. (Doc. 30–Exhibit 2, 1). After the requested waiver was denied, Zaloga was the hiring supervisor during the hiring process at issue in this case. (Doc. 32-Exhibit 9-11, 29-36). While Zaloga was the chair of the committee, two other individuals were also on the committee.

The fact that Zaloga was on the hiring committee and interview panel, by itself, also does not show racial discrimination. Zagola was already on the committee at the time the posting was created and before there were any applicants. (Doc. 30-Exhibit 2). The plaintiff has not cited to anything on the posting itself that was racially discriminatory, nor was the plaintiff deterred from applying. Zagola's presence on the committee did not violate any university policies, and does not imply pretext in this case.

In his response to Defendants' Motion for Summary Judgment, Plaintiff argues that the fact that the job flyer stated "compete by examination" led him to believe he would get the job by having the highest examination score (Response 15-18) and that the interview process was designed to prevent Johnson from getting the job. However, the facts before the Court indicate that the hiring committee was not informed of the scores until well after the hiring process (Doc. 30-Exhibit 5), and the plaintiff has offered no facts or evidence to the contrary. Furthermore,

Plaintiff stated in his deposition that he did not feel as though he was treated unfairly by anyone on the panel during the interview process. (Doc. 30-Exhibit 6, 48-49). There was no evidence presented that suggests the interview was something added on after the exam was scored. While the plaintiff seems to imply this in his motion, he does not offer any supporting facts. (Response 15-18).

Where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the plaintiff's competing qualifications does not establish evidence of pretext "unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002), citing *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999). "In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.' " *Id*. This approach is logical under Title VII because a court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Id*. at 1181.

Snyder had five years of experience as the mainland operation supervisor for the Galveston County Beach and Parks Department; 19 years of experience with SIUE with 17 of those years in supervisory positions; experience supervising in various divisions throughout the university including the Morris University Center, the Alton School of Dental Medicine, University Housing, Head Start, and the Edwardsville Main Campus. (Doc. 30-Exhibit 2, 4-5). Plaintiff, on

the other hand, had only 10 years of supervisory experience with seven of those years with SIUE. (Doc. 30-Exhibit 2, 5).

In support of his assertion that he was objectively more qualified, Plaintiff includes a chart comparing various qualifications between Plaintiff and Snyder. (Response-18-19). An employee's "own opinions about his ... qualifications [do not] give rise to a material factual dispute." *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir.1996). Here, Plaintiff does not offer facts or evidence, other than his own beliefs regarding the matter, to show that Snyder was not better qualified. While the chart does outline the candidates' qualifications, it does not address the weight afforded to each qualification and does not create an inference of racial discrimination. Even while looking at the facts in the light most favorable to the plaintiff, there has been no evidence provided that shows that Johnson was clearly superior so that no reasonable employer could have concluded that Snyder was the better person for the job.

The Court does "not sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather, [it is] concerned only with whether the employer's proffered explanation was honest." *O'Regan v. Arbitration Forums, Inc*., 246 F.3d 975, 984 (7th Cir.2001 Thus, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII." *Id*. at 1185.

As no pretext has been shown, Plaintiff has failed to meet its burden to withstand a motion for summary judgment regarding the Title VII and ICRA claims. Specifically, Plaintiff has failed to present sufficient facts and evidence that would allow a reasonable jury to determine that his claims had merit. The assertions in Plaintiff's response consist mostly of conclusory allegations, unsupported by the record, and need not be taken as true by the Court, even in the

context of a summary judgment motion. *DeLoach* 164 at 402 Therefore, the Court grants the defendants' Motion for Summary Judgment as to Counts I and VI.

## II. Count III against Neher and Zaloga (Section 1983)

The same burden shifting analysis applies to the claims against these two defendants. See IStienhauer v. Degolier, 359 F.3d 481, 483 (7th Cir. 2004) (applying the burden shifting analysis to Section 1983 claims at the summary judgment stage). An individual can only be liable under Section 1983 if he caused or participated in the alleged discriminatory conduct. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Plaintiff has not set forth any facts supported by the record that show Mr. Zaloga discriminated against him based on his race. In his deposition, Plaintiff admitted that Zaloga did not make any discriminatory remarks towards him during the hiring process. (Doc. 30-Exhibit 6). He also stated that he did not feel as though he was treated unfairly during the process. (Doc. 30-Exhibit 6). Zaloga was one of three members of the interview committee who recommended Snyder for the position. (Doc. 30-Exhibit 2). These interviews all consisted of the same questions and took the same amount of time. (Doc.30-Exhibit 2). Plaintiff does not counter any of these facts in his response brief. He only adds that Zaloga had sought the waiver to bypass the posting process in order to move Snyder into the position. There are no facts that could persuade a reasonable jury to find that Zaloga violated Section 1983.

Regarding Mr. Neher, there are even fewer facts presented that could support any inference that he was involved in racial discrimination during the hiring process at issue in this case. There can be no finding of discrimination where the alleged discriminatory actions came from a non-decision-making person without any say or participation in a hiring decision. *Sanford v. Walgreen Co.,* 2010 WL 380907, *5 (N.D.Ill 2010). Plaintiff's assertions regarding Neher seem to only regard his position as the Vice Chancellor for Administration with the Facilities

Management department being one of the departments he was in charge of at the time of the events giving rise to this cause of action. (Doc. 32-9).  There are no facts that assert that Neher was involved in the hiring process at issue in this case other than the fact that he signed off on the hire of Snyder and that he had the ability to deny a hire.  (Doc. 32-11).  The facts alleged involve mainly the institutional hiring practices a Southern Illinois University, and the inadequacy of the raw statistics provided was addressed above.  Therefore, any allegation that the hiring practices or Neher's individual role in implementing those practices was discrimanatory is not supported without further analysis by the plaintiff.  There has been no evidence provided that Neher was aware of any racial motivation with regard to Snyder's promotion, and therefore, no evidence that he should have denied the recommendation of the committee.  Regarding Neher and Zagola, therefore, there is insufficient evidence on the record for the plaintiff to survive summary judgment on the Section 1983 claims.

The Court **GRANTS** defendants' motion for summary judgment (Doc. 30) with respect to Count I against the Board of Trustees (Title VII); Count III against Neher and Zaloga (Section 1983); and Count IV against the Board of Trustees (Illinois Civil Rights Act).  As no claims remain pending, the Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

    IT IS SO ORDERED.

    DATED:  November 4, 2014

/s/    Staci M. Yandle  
**STACI M. YANDLE**  
**DISTRICT JUDGE**